UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

AGAPE AIM CENTERS, LLC, and
1164 E OAKLAND PARK BLVD LLC,
Florida limited liability corporations,

       Plaintiffs,

vs.

CITY OF OAKLAND PARK,
a Florida municipal corporation,

       Defendant.
_____/

# **COMPLAINT**

## Introduction

Plaintiffs, Agape AIM Centers, LLC ("Agape"), and 1164 E Oakland Park Blvd LLC ("1164"), file this action seeking declaratory, injunctive and monetary relief against Defendant, the City of Oakland Park ("City" or "Oakland Park"), and state:

1. By this action, Agape asserts claims under Florida law for estoppel, under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 ("Section 504") (collectively, the "Acts"), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2. The facts are simple. Agape was and is licensed by and in good standing with the Florida Department of Children and Families ("DCF") to provide substance use disorder treatment services.

1

3. Since 2017, Agape has operated an outpatient treatment facility to provide medical treatment for persons with substance use disorder disabilities under the direction of a medical doctor at 4837 North Dixie Highway in Oakland Park.

4. In 2023, Agape sought to expand its out-treatment and administrative operations to 1164 E. Oakland Park Boulevard (the "Property") to provide substance use disorder treatment to meet overwhelming demand.

5. On January 28, 2023, Agape's principal, George J. Mavrookis, entered into a contract to purchase the property at 1164 E. Oakland Park Boulevard from Apex Florida Realestate [sic] LLC for $4,250,000. Mr. Mavrookas then assigned the purchase contract to 1164 E Oakland Park Blvd LLC, a Florida limited liability company, which now owns it.

6. On April 5, 2023, Mr. Mavrookas' lawyer, Tad Ground, sent and paid for a zoning verification request letter to the City proposing to use the property as an office/medical office, which was the same use as its existing use. (O 1). Mr. Ground's letter mentioned the 1164 E. Oakland Park Boulevard address but made no representation as to the zoning district.

7. On April 5, 2023, Richard A. Buckeye, AICP, a senior planner from the City, sent a letter to Agape verifying that:

> **The property (Folio #4942 26 11 0020) is currently zoned B-1**, Community Business District which complies with the Commercial Future Land Use Plan designation on the City's Future Land Use Map.[1] **The proposed "Office/Medical Office" business use falls under the category of "professional office", which is allowed in the B-1 Zoning District.**

---

[1] Curiously, when navigating the City's Planning and Zoning website and clicking Future Land Use Map - Comprehensive Plan under "Current Maps," the land use of the parcel is "Commercial." (Exhibit 2; scroll map to bottom right to **red arrow** that points to location). However, the 2022 Oakland Park Future Land Use Map under "Helpful Downloads" shows the land use as Local Activity Center ("LAC"), which is consistent with the OP3D-MR zoning. In any event, this is a direct discrepancy on the City's website.

(Exhibit 3). (emphasis added).

8. In reliance thereon, Agape closed on the $4,250,000 purchase on April 20, 2023 and invested $200,000 in build-out costs.

9. Notwithstanding the above, on or about July 20, 2023, three months after closing, the City sent Mr. Mavrookas a notice to cease business operations by July 27, 2023 for not having a certificate of use, because "the current use is not permitted in OP3D-MR Zoning District." Agape asserts that the City apparently sent the notice of violation because Agape provides medical treatment **under the supervision of a medical doctor** to people with substance use disorders.

10. On September 1, 2023, Agape sent a letter to the City requesting various solutions:

> One solution would be for the City to treat the property as legally non-conforming based upon the apparently erroneous zoning verification that my client detrimentally relied upon.
> A second option would be a text amendment to allow rehabilitation center uses in the Downtown.
> A third option would be to classify Agape as a medical office consistent with the zoning verification.
> A fourth option would be, as an ADA or FHA reasonable accommodation, to classify Agape as a medical office consistent with the zoning verification.
> And a fifth option would be for the City to find a comparable site within identical or closer proximity to Agape's patient housing and compensate Agape for any losses associated with the City's initial zoning verification.

(Exhibit 4).

11. On September 22, 2023, the City advised by letter that the application for zoning verification erroneously mislabeled the proposed use of the property as "office/medical office," which is a use permitted in that zone by LDC § 24-266, instead of "Rehabilitation - Drug addiction treatment, mental health therapy, and counseling," which is a use prohibited in that zone by LDC § 24-266. (Exhibit 5).

12. That letter also admitted that the City "incorrectly" labeled the zoning district as "B-1" when, in fact, the zoning district was "Downtown Development District ('OP3D') - Middle River ('MR')."

13. The City's stated justification for rescinding its zoning verification and threatening code enforcement prosecution was that although "Medical Offices" provide medical treatment to everyone and are permitted in this zone,[2] the proposed use was really "Rehabilitation—Drug addiction treatment, mental health therapy, and counseling" use, which treat solely people with unpopular disabilities such as drug addiction and psychiatric disabilities, and which are prohibited.

14. In that same letter, the City rejected Agape's proposed solutions and advised that "[u]nfortunately for your client, this is not the type of issue that may be ameliorated by reasonable accommodation."

15. The City is estopped from nullifying the zoning verification letter it sent to Agape upon which they detrimentally relied before closing on Agape's $4,250,000 purchase of an "Office/Medical Office" building and investing $200,000 in internal improvements at 1164 E. Oakland Park Boulevard, where they intended to provide substance use disorder treatment services to patients with disabilities.

16. Further, the City's reliance on Agape having "erroneously mislabeled the proposed use of the property as 'office/medical office' instead of 'Rehabilitation - Drug addiction treatment, mental health therapy, and counseling,'" is, as a matter of law, not a permissible legal justification for rescinding the zoning verification or threatening code enforcement prosecution. The City's

---

[2] Notably, since 2021, at least seven business tax receipts for "Medical Office" or "Doctor" have been associated with this address including to American Pain Experts and AIDS Healthcare Foundation. Further, Agape's Florida licensure requires that it be staffed with a medical director who is responsible for all treatment.

4

distinction is based on an LDC code provision that facially violates the ADA, Section 504, and the Equal Protection Clause, as it classifies drug addiction treatment more restrictively than "Medical Offices," which treat everyone and are permitted in this zone.

17. After the City rescinded the zoning verification and threatened code violations, Agape responded that it would not begin providing substance use disorder treatment services as planned at 1164.

18. Agape then re-leased its previous treatment site at 4837 North Dixie Highway but at the much higher cost of $44,000 per month, or $528,000 per year.

19. Because 1164 leases to Agape and Agape treats persons with disabilities or is otherwise associated with treatment providers for, or persons with, disabilities, they are persons "alleging discrimination on basis of disability" under the ADA, 42 U.S.C. § 12133, and 28 C.F.R. § 35.130(g), and therefore have standing to sue, as it have been injured, and continue to be injured, by the City's discriminatory conduct, and have suffered and continue to suffer damages for lost or delayed profits, lost opportunity, frustration of mission, diminution of market share, and a loss of civil rights as a direct result of the City's conduct.

20. As detailed further below, Agape's current and prospective patients are considered people with disabilities under the ADA and are therefore a protected class. Under the ADA, zoning ordinances that apply only to individuals with disabilities or single them out for differential treatment are facially discriminatory. Thus, it is unlawful for a local government to treat substance use disorder treatment programs for people with disabilities differently from other health or medical care services.

21. Agape meets the standards for outpatient substance use disorder treatment required by DCF. It is currently licensed under Fla. Stat. § 397.311(26) to provide outpatient substance use disorder treatment services.

22. It is fully accredited by the Joint Commission for Accreditation of Health Care Organizations as a Behavioral Health Facility, and the facility is registered on the Substance Abuse and Mental Health Services ("SAMHSA") locator.

23. As a condition of licensure for treatment of persons with substance use disorders, DCF requires Agape and other licensees to provide proof that their facilities are properly zoned. *See* Rule 65D-30.0047(11), F.A.C., and https://www.flrules.org/Gateway/reference.asp?No=Ref-14618, p. 5 at 16.

24. While comparable health care treatment facilities like AIDS counselling, medical offices, and other healthcare uses not otherwise listed are permitted as special exceptions in the OP3D MR zone, out-patient substance use disorder treatment facilities such as the one proposed by Agape with licensable service components listed in Fla. Stat. § 397.311(26) are prohibited in the OP3D MR zone.

25. The properties surrounding 1164 are East Oakland Park Boulevard and a gas station and Goodwill store across the street to the north; a mini warehouse storage facility to the south and a sexual assault treatment facility behind that; a gas station/convenience store/carwash to the east; and a strip shopping center with various businesses including a sandwich shop, farmer's market, kitchen remodel store, etc. to the west.

**Jurisdiction and Venue**

26. This action is brought pursuant to the ADA, Section 504, and 42 U.S.C. § 1983.

27. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 1343(a), 1367, 1391(b)(2), 29 U.S.C. § 794(a), and 42 U.S.C. § 12182(a).

28. In addition to damages, Agape seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 12133 and Rules 57 and 65 of the Federal Rules of Civil Procedure and its Florida law claim for estoppel.

29. Venue is proper in the United States District Court for the Southern District of Florida, as all acts complained of occurred within this District in Broward County, Florida.

## Parties

30. Agape AIM Centers, LLC is a Florida limited liability company authorized to do business in the State of Florida. 1164 E. Oakland Park Blvd, LLC is a Florida limited liability company authorized to do business in the State of Florida.

31. The City of Oakland Park is a Florida municipal corporation.

32. The City exercises enforcement and interpretive authority over zoning ordinances and otherwise provides municipal services.

33. The City is responsible for the acts of its agents and employees and for the enforcement of its zoning, building and property maintenance codes. The City is a public entity under the ADA, 42 U.S.C. § 12131(1), and also receives federal financial assistance required to make is a party under Section 504.

34. Agape has hired the undersigned and agreed to pay them reasonable attorneys' fees.

35. Because of the City's discriminatory zoning scheme, 1164 and Agape have suffered, and continue to suffer, damages in lost or delayed profits, loss of civil rights, lost opportunity, frustration of mission, diminution of market share, and other damages as a direct result of the City's conduct.

7

36. As noted above in Paragraph 10, Agape attempted to resolve this matter amicably.

37. Loss of treatment services is direct and imminent because of the City's facially discriminatory zoning scheme. Agape, and its disabled patients, will suffer irreparable injury if this Court does not issue a preliminary and permanent injunction. The loss of rights protected by the ADA and Section 504 is so serious that, as a matter of law, irreparable injury is presumed. Agape has no adequate remedy at law.

38. There is an actual, bona fide and justiciable controversy existing between Agape on the one hand and the City on the other hand as to whether the City's imposition of exclusionary land use requirements for substance use disorder treatment patients and providers, as compared to less onerous land use requirements for comparable heath care and medical uses for patients who are not suffering from substance use disorders, violates the ADA, Section 504 and the Equal Protection Clause.

39. The City, by its facially discriminatory LDC, is intentionally treating 1164 and Agape and its patients in a discriminatory fashion and is imposing far more stringent land use requirements on Agape and its patients than it imposes upon comparable medical uses for patients who are not suffering from substance use (and psychiatric) disorders.

40. Singling out substance use disorder treatment facilities and their residents for different treatment constitutes facial discrimination and violates the ADA, Section 504, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Agape and 1164 seek temporary and permanent injunctive relief, damages, and attorneys' fees to remedy those violations.

**Overview of Recovery, and Agape's Proposed Treatment Program**

41. Substance use disorder is a disease that has physiological and psychological

components. The consequences of substance use disorders are vast and varied and affect people of all ages and backgrounds. When people enter treatment, the disorder has often taken over their lives. It has disrupted how they function in their family lives, at work, and in the community, and has made them more likely to suffer from other serious illnesses. Most individuals seeking treatment are eager for help and require both medical and emotional support services.

42. Fortunately, there is abundant evidence that treatment works, and there are many different methods to treat persons with alcohol and other substance use disorders. To be successful, treatment must address the needs of the whole person. The goal is to provide the best possible outcome for the patient.

43. To receive treatment, Agape's patients must have a primary substance use disorder that requires stabilization as outlined by the American Society of Addiction Medicine ("ASAM"). ASAM defines these criteria over the following six dimensions: (1) acute alcohol and/or drug intoxication, (2) biomedical conditions or complications, (3) emotional, behavioral, or cognitive conditions and complications, (4) readiness to change, (5) relapse potential, and (6) recovery environment.

44. Agape's patients will be at what ASAM refers to as level 3.5, which is a treatment category.

45. All residents at Agape will be admitted and discharged by a medical doctor. At the time of admission, residents are given a handbook, which provides a schedule for medications, group discussion times, individual therapy, and meals, as well as Agape's rules and regulations. Residents are also subject to no-notice drug testing. They are also given a biopsychosocial assessment by a counselor.

46. Agape is not a receiving facility for acute residents mandated to treatment.

47. Agape's treatment services will be provided in an office setting.

48. The administrative staff will include a Medical Director (M.D.), Chief Operating Officer (COO), several Registered Nurses (R.N.), Clinical Director (C.A.P., L.M.H.C. or L.C.S.W.), and Program Director. The direct services staff will include physicians, advanced nurse practitioners, registered nurses, licensed practical nurses, clinical social workers, certified addiction professionals, licensed mental health counselors, behavioral health technicians, and other auxiliary staff such as dietary, business, and housekeeping personnel. Agape will be staffed with medical professionals on a 24-hour basis, seven (7) days per week, three hundred sixty-five (365) days per year.

49. The City's treatment of substance use disorder treatment facilities such as Agape, even if it could be construed as neutral on its face and in motive and intent, has a disparate impact on Agape and its patients in violation of the ADA and Section 504.

### *ADA*:

50. Congress's stated broad goal in enacting the ADA was to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132. Section 12132 constitutes a general prohibition against discrimination based on disability by public entities.

51. Zoning is an activity covered under Title II of the ADA. In the preamble to the regulations implementing 42 U.S.C. § 12132, the Department of Justice notes that "[T]itle II applies to anything a public entity does," 28 C.F.R. pt. 35, app. A at 438 (1998), and, in the

Technical Assistance Manual compiled to interpret the ADA, expressly uses zoning as an example of a public entity's obligation to avoid discrimination. The federal regulations implementing the ADA prohibit a public entity from discriminating against a qualified individual with a disability by administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability.

52. A public entity is further prohibited from establishing requirements for the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(6).

53. The federal regulations also make it unlawful for a public entity to make determinations about the site or location of a facility where such determinations *have the purpose or effect* of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to, discrimination with respect to those facilities. 28 C.F.R. § 35.130(4)(i).

**Count I – Facial Discrimination Claim under the ADA against the City**

54. 1164 and Agape incorporate by reference the allegations contained in paragraphs 1 through 53 above as though fully set out herein. Agape's prospective patients are qualified individuals with disabilities within the meaning of 42 U.S.C. § 12101.

55. The City is a qualifying public entity within the meaning of the ADA. 42 U.S.C. § 12131(1)(A).

56. The City's application of its facially discriminatory zoning code to prevent 1164 and Agape's proposed expansion constitutes discrimination under Title II of the ADA.

57. The facially discriminatory zoning scheme constitutes intentional discrimination against, and/or has the effect of discriminating against, persons in recovery and those who provide services to them, namely Agape and its prospective patients.

11

58. As a result of the City's facially discriminatory zoning scheme, Agape has expended time and financial resources and has lost the opportunity to conduct its business and provide much-needed treatment.

### Count II – Reasonable Accommodation Claim under the ADA against the City

59. 1164 and Agape incorporate by reference paragraphs 1 through 53 above as though fully set out herein.

60. The reasonable accommodation request in Agape's September 1, 2023 letter was facially reasonable, thereby shifting the burden to the City to show that it was not.

61. The City violated the ADA when it denied Agape's reasonable accommodation request.

### Count III – Claims under Section 504 against the City

63. Agape incorporates by reference paragraphs 1 through 49 above as though fully set out herein.

64. Congress intended that individuals seeking to overcome their addiction would be protected by the Rehabilitation Act when seeking access to services, benefits, and employment provided by a federally-funded program. The Rehabilitation Act specifically recognizes as handicapped those individuals with drug addiction who are "participating in a supervised rehabilitation program and [are] no longer engaging [in the illegal use of drugs]." 29 U.S.C. § 706(8)(C)(ii)(II).

65. Section 504 of the Rehabilitation Act prohibits discrimination against persons with disabilities by any entity that receives federal financial assistance:

> no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

29 U.S.C. § 794(a).

66. The City has violated Section 504 by discriminating against Agape, 1164, and Agape's disabled patients by treating substance use disorder treatment programs for people with disabilities differently from other health or medical care services.

67. Because the Rehabilitation Act broadly defines "program or activity" to include "all of the operations of a local government receiving federal financial assistance," 29 U.S.C. § 794(b)(1)(A) (1999), zoning, a normal function of a governmental entity, is a covered activity within the meaning of the Act.

**Count IV: Permanent Injunctive Relief Based Upon Equitable Estoppel**

68. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49.

69. In good faith reliance upon the City's express assurances that the Property was properly zoned for medical treatment, 1164 and Agape have suffered prejudice by making substantial changes in their positions and by incurring extensive obligations and expenses such that it would be wrongful and unjust to destroy the rights it has acquired.

66. Agape and 1164 have vested rights to providing substance use disorder treatment as authorized by Florida law. The City is equitably estopped from now denying 1164 and Agape's rights after the City's zoning verification to operate the intended facility.

67. The City has targeted Agape and threatened code enforcement prosecution to retroactively destroy Agape's vested rights, causing Agape prejudice and irreparable harm.

13

68. Agape has no adequate remedy at law to redress the irreparable harm that it has suffered and will suffer should injunctive relief be denied.

69. The issuance of the injunctive relief requested by 1164 and Agape does not disserve the public interest.

**Count V: Claims under 42 U.S.C. § 1983 against the City**

70. Agape incorporates by reference paragraphs 1 through 49 above as though fully set out herein.

71. The Fourteenth Amendment to the United States Constitution guarantees the equal protection of the laws.

72. The City has singled out entities such as 1164 and Agape for disadvantageous treatment because of Agape's willingness to treat patients with substance use disorders, who are a politically unpopular group.

73. Agape and 1164 have suffered economic loss as well as other burdens imposed upon it and identified above.

74. 1164 and Agape's interests and those of Agape's prospective patients are sufficiently aligned to ensure that 1164 and Agape will properly represent its prospective patients' interests in this litigation.

75. In addition, because of the stigma associated with people suffering from substance use disorder, it is unlikely that prospective patients will seek to vindicate their own rights against the City.

76. 1164 and Agape and its residents have been deprived of their rights, privileges, and immunities secured by the Constitution and the laws of the United States, including, without

limitation, the equal protection guarantee of the Fourteenth Amendment to the United States Constitution, for which 42 U.S.C. § 1983 provides a remedy.

### Requested Relief

WHEREFORE, 1164 and Agape respectfully request that this Court:

A. Find that the City is estopped from denying, and enter an injunction enjoining the City from denying, Agape's right to operate Plaintiffs' intended facility operations as authorized by Florida law.

B. Find and declare that the City's effective refusal to verify zoning and its further refusal to grant a reasonable accommodation constitute violations of each of the Acts.

C. Issue a permanent injunction enjoining the City from continuing to violate the Acts.

D. Order the City to, promptly and without delay, issue zoning verifications or reasonable accommodations.

E. Award Plaintiffs damages under the Acts for the harm they experienced because of the City's discriminatory practices.

F. Award Plaintiffs under the Acts reasonable attorney's fees and costs.

G. Award such other relief as this Court deems appropriate, just and proper.

Respectfully submitted,

s/ James K. Green
James K. Green, Esq.
Florida Bar No: 229466
**James K. Green, P.A.**
Flagler Center, Suite 306
501 South Flagler Drive
West Palm Beach, Florida 33401
Telephone: 561-659-2029
jkg@jameskgreenlaw.com
**Counsel for 1164 and Agape**